**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HAI THANH LE,<br><br>                Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESNUT, et al.,<br><br>                Respondents. | Case No. 1:26-cv-01750 JLT SAB<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS; DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT; AND DIRECTING THE CLERK OF COURT TO CLOSE THIS CASE<br><br>(Docs. 1, 3) |

Before the Court is Hai Thanh Le's petition for writ of habeas corpus brought under 28 U.S.C. § 2241, (Doc. 1), and his request for a temporary restraining order (Doc. 3). Petitioner is an immigration detainee in U.S. Immigration Customs and Enforcement custody at the California City Detention Facility. Having evaluated the habeas petition (Doc. 1), TRO request (Doc. 3), Respondent's opposition (Doc. 8), and Petitioner's reply (Doc. 9), the Court **GRANTS** the habeas petition[1], **DENIES** the TRO as moot, and **ORDERS** Petitioner's immediate release from custody.

## I.    FACTUAL & PROCEDURAL BACKGROUND

Petitioner is a fifty-five-year-old national of Vietnam who lawfully immigrated as a

---

[1] When the Court set a briefing schedule on the motion for TRO, it ordered the parties to state their position as to whether the motion for TRO should be converted to a preliminary injunction without further briefing, whether the parties sought a hearing on the motion, and whether the parties sought additional briefing on the merits of the habeas petition. (Doc. 6.) Neither party requested a hearing or further briefing regarding the motion, and both parties were amendable to the Court ruling on the underlying habeas petition without further briefing. (Doc. 8 at 1; Doc. 9 at 1.) Given that Respondents had notice and opportunity to respond to the motion for TRO and habeas petition, (Doc. 8), the Court **GRANTS** the habeas petition and **DENIES** the TRO as moot.

1

refugee to the United States in 1985. (Doc. 1 at 3.) He was 15 at the time. (*Id*.) While living in the United States, he opened his own business and married a U.S. Citizen with whom he has three children. (*Id*.) On or around April 1, 1997, the Department of Homeland Security initiated removal proceedings against him. (*See* Doc. 1 at 16.) On May 14, 1999, Petitioner was ordered removed to Vietnam and Petitioner did not appeal that decision. (Doc. 1 at 3.) Immediately after he was ordered removed, ICE detained the Petitioner to remove him to Vietnam. (*Id*.) After three months in custody, on or around August 14, 1999, ICE released the Petitioner on an order of supervision ("OSUP") due to an inability to deport him to Vietnam.[2] (*Id*.) The OSUP indicates that Petitioner was "permitted to be at large under [certain] conditions" because ICE "ha[d] not effected [his] deportation or removal during the period prescribed by law." (Doc. 1 at 16.) For the past twenty-six years, Petitioner claims to have "regularly checked in every year as required with ICE without any issues" and that he "compli[ed] with the terms of supervision." (*Id*. at 4.)

While appearing for an in-person check-in on February 12, 2026, the government arrested the Petitioner. (Doc. 1 at 4.) Petitioner claims that the government has provided "no new grounds" for his re-detention or any indication that his "removal is likely imminent." (*Id*. at 5.) There is also no indication in the record, nor any allegations by the government, that Petitioner has a criminal record, has recently committed a crime, or has violated a condition of release. (*See* Docs. 1, 3, 8, 9.) Petitioner claims that the government failed to provide notice explaining why his OSUP had been revoked and failed to provide an informal interview or give him any other opportunity to be heard. (Doc. 1 at 4.) Respondents, however, claim that Petitioner received notice regarding revocation of release and an informal interview on February 12, 2026, the day he was arrested. (Doc. 8 at 2–3; Doc. 8-1 at 1–2; 8-2 at 1.)

The notice of revocation of release indicates that Petitioner's OSUP was revoked "pursuant to 8 C.F.R. § 241.4(l)" because "[i]t is appropriate to enforce the removal order entered against [him] as ICE has the ability and means to effectuate [his] removal. ICE is seeking a travel

---

[2] DHS's notice of revocation of release indicates that the OSUP was issued December 17, 1999, (*see* Doc. 8-1 at 1), and the OSUP notice itself is dated December 8, 2004. (*See* Doc. 1 at 16.) In any event, it appears Petitioner was released from ICE custody sometime in 1999 due to ICE's inability to deport him to Vietnam. (Doc. 1 at 16.)

2

document to effect your expeditious removal to Vietnam." (Doc. 8-1 at 1.) During his interview, Petitioner did not provide a written statement or any documentation to contest the revocation but indicated he did not want to be deported. (Doc. 8-2 at 1.) Petitioner claims that the notice and interview were deficient because Petitioner was not given "advance notice" prior to re-detention and was not "made aware that he could bring evidence or documents to contest the revocation" with no real opportunity to present evidence because the notice and interview occurred the same day as his arrest.[3] (Doc. 9 at 2–3.)

On March 3, 2026, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and a motion for TRO. (Docs. 1, 3.) On March 4, 2026, this Court issued a Minute Order calling for the filing of an opposition and reply related to the TRO. (Doc. 6.) On March 17, 2026, Respondents filed an opposition. (Doc. 8.) On March 18, 2026, Petitioner filed a reply. (Doc. 9.) Petitioner argues that his Fifth Amendment due process rights have been violated and that he is entitled to immediate release from ICE custody. (Doc. 1 at 4.) Namely, Petitioner argues that Respondents violated due process when they re-detained him without first showing a change in circumstances or showing that removal to Vietnam is now significantly likely to occur, and without meaningful notice or an opportunity to be heard, after twenty-six years of release on supervision. (Doc. 1 at 5; Doc. 9 at 2–3.) According to Petitioner, there is no change in circumstances to justify his re-detention because he has no OSUP violations and his removal to Vietnam is not reasonably foreseeable.[4] (Doc. 1 at 4–6.)

In their opposition, Respondents argue that (1) the recent increase in travel document

---

[3] Given that Respondents failed to comply with applicable regulations in revoking Petitioner's supervised release—namely, failure to show that removal to Vietnam is significantly likely to occur as required under 8 C.F.R. § 241.13(i)(2)—which serves as the basis for immediate release, this Court need not address these additional arguments.

[4] Petitioner also argues that his detention to effectuate removal to a third country violates due process because ICE has not given him sufficient notice of the proposed third country destination or an opportunity to request deferral or withholding of removal to that country and constitutes a punitive removal practice. (Doc. 1 at 9–10.) However, Respondents expressly note that "the government is only 'seeking a travel document to effect . . . expeditious removal to Vietnam.' [] Thus, the government disputes and [the] Court should reject all of Petitioner's claims regarding removal to third countries." (Doc. 8 at 3.) Because removal to a third country is not at issue, this Court declines to address these arguments.

3

approvals and subsequent removals to Vietnam; and socio-political shift by Vietnam in its willingness to accept its nationals constitutes changed circumstances such that removal is now reasonably foreseeable; and that (2) under *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), Petitioner is subject to mandatory detention while the government executes his final order of removal and his detention is presumptively reasonable because it has not exceeded the six-month removal period under 8 U.S.C. § 1231(a)(2).

## II.    JURISDICTION

Under 28 U.S.C. § 2241, the Court has the authority to determine a petition for writ of habeas corpus in which the petitioner asserts he is being held in custody "in violation of the Constitution or laws or treaties of the United States." "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Petitioner seeks his immediate release from custody, which he contends violates the Fifth Amendment Due Process Clause under the United States Constitution. (Doc. 1 at 4–6.) Thus, he properly invokes the Court's habeas jurisdiction.

The INA limits judicial review in many instances. Though 8 U.S.C § 1252(g) precludes this Court from exercising jurisdiction over the executive's decision to "commence proceedings, adjudicate cases, or execute removal orders against any alien," there is no removal order at issue here and the central issue is Petitioner's continued detention. Thus, this Court has the authority to review the government's termination of Petitioner's release and re-detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (holding that § 1252(g) precludes judicial review only as to the three areas specifically outlined in the subsection); *see also Reno v. American–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999).

## III.    ANALYSIS

Petitioner argues he is entitled to habeas relief because ICE's revocation of his supervised release failed to comply with applicable regulations and relevant law. (*See* Doc. 1 at 4–7.) The Court agrees and grants the petition for writ of habeas corpus.

///

**A.  Detention Under 8 U.S.C. §1231(a)(2) and Why *Zadvydas* Is Inapplicable.**

Under 8 U.S.C. § 1231(a)(2), a noncitizen with a final order of removal is subject to mandatory detention. 8 U.S.C. § 1231(a)(2) ("*During the removal period*, the Attorney General *shall detain* the alien. Under no circumstances during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.") (emphasis added). Further, under 8 U.S.C. § 1231(a)(6), "[a]n alien ordered removed who is inadmissible under section 1182 of this title, removable under section . . . 1227(a)(2) . . . of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, *may be detained beyond the removal period* and, if released, shall be subject to . . . terms of supervision." 8 U.S.C. § 1231(a)(6) (emphasis added).

Respondents argue that Petitioner's detention is presumptively reasonable under 8 U.S.C. § 1231(a)(2) because Mr. Le has been detained for less than six months and he is subject to mandatory detention while the government executes his final order of removal. (*See* Doc. 8 at 2.) Respondents rely on *Zadvydas v. Davis*, where the Supreme Court held that under these provisions the government may detain a removable noncitizen beyond the 90-day statutory removal period, but only for so long as "*reasonably necessary* to secure the alien's removal." *Zadvydas*, 533 U.S. at 682; *see also* 8 U.S.C. § 1231(a)(1)(A) ("[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days"). The Court explained that the statute contains an implicit reasonable time limitation, which is presumptively six months, after which the noncitizen bears the burden of proving that there is "no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 682, 701.

However, *Zadvydas* is not applicable to Petitioner's circumstances. *Zadvydas* dealt with the prolonged detention of two criminal noncitizens—who had been taken into INS custody following their release from prison and upon the issuance of a final order of removal—but who were *continuously held* in INS custody beyond the statutory 90-day removal period, not *released* on an order of supervision as Petitioner was here. *Zadvydas*, 533 U.S. at 684–686; (Doc. 1 at 3–4,

16.) As the court in *Nguyen* best explained:

> This case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in *Zadvydas*. This case is about ICE's authority to *re-detain* [the petitioner] after he was issued a final order of removal, detained, and subsequently released on an OSUP. The DHS regulation, 8 C.F.R. § 241.13(i), applies to non-citizens in Petitioner's situation. *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149 (D. Mass. June 20, 2025).

On numerous occasions, this Court and many others, have adopted the reasoning set forth in *Nguyen*. *See Escalante v. Noem*, No. 9:25-cv-00182-MJT, 2025 WL 2206113, at *3–4 (E.D. Tex. Aug. 2, 2025); *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *3 (E.D. Cal. July 16, 2025); *Phan v. Beccerra*, No. 2:25-cv-01757-DC-JDP, 2025 WL 1993735, at *3 (E.D. Cal. July 16, 2025); *Yan-Ling X. v. Lyons*, No. 1:25-cv-01412-KES-CDB, 2025 WL 3123793, at *3–5 (E.D. Cal. Nov. 7, 2025); *J.L.R.P. v. Wofford*, No. 1:25-cv-01464-KES-SKO, 2025 WL 3190589, at *4–5 (E.D. Cal. Nov. 14, 2025); *Huang v. Albarran*, No. 1:25-cv-01308-JLT-EPG, 2026 WL 279888, at * 4 (E.D. Cal. Feb. 3, 2026). These cases explain that instead of *Zadvydas*, the regulation at 8 C.F.R. § 241.13(i)(2) apply to noncitizens in Petitioner's situation and outline the procedures to be followed. As *Escalante* explained:

> Section 241.13(i)(2) entitled "Revocation for removal" provides that "the Service may revoke an alien's [supervised] release under this section and return the alien to custody if, on account of changed circumstances, *the Service determines* that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2) (emphasis added). Section 241.4(b)(4) entitled "*Service determination under 8 C.F.R. 241.13*" states that, after supervised release under section 241.13, "*if the Service subsequently determines*, because of a change in circumstances, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future to [the country to which the alien was ordered removed or] a third country, the alien shall again be subject to the custody review procedures under this section." 8 C.F.R. § 241.4(b)(4) (emphasis added).
>
> These regulations clearly indicate, upon revocation of supervised release, it is the Service's burden to show a significant likelihood that the alien may be removed. Other cases have indicated the same upon revocation of release. *See Nguyen v. Hyde*, [788 F. Supp. 3d 144, 149–150] (D. Mass. June 20, 2025) (finding *Zadvydas* 6-month presumption not applicable where alien is "re-detained" after having been on supervised release and that respondents failed to meet their burden to show a substantial likelihood of removal is now reasonably foreseeable); *Tadros v. Noem*, No. 25-cv-4108, 2025 WL 1678501 (D. N.J. June 13, 2025) (finding 6-month presumption had long

6

lapsed while petitioner was on supervised release and it is respondent's burden to show removal is now likely in the reasonably foreseeable future). Imposing the burden of proof on the alien each time he is re-detained would lead to an unjust result and serious due process implications.

*Escalante*, 2025 WL 2206113, at *3–4.

Likewise, 8 C.F.R. § 241.13(i)(2) applies to this case. On May 14, 1999, Petitioner was ordered removed, immediately went into ICE custody after being ordered removed, ICE was unable to remove him at that time, ICE released him on OSUP on or around August 14, 1999, and then ICE re-detained him twenty-six years later to effectuate his removal. (*See* Doc. 1 at 3–4, 16–17; Doc. 8-1 at 1–2.) Respondents also fail to dispute Petitioner's assertion that for the past twenty-six years he has fully complied with OSUP.[5] (Doc. 1 at 4; *see* Doc. 8.) These facts show that § 241.13(i)(2) applies here; therefore, Respondents bear the burden of showing Petitioner's removal is significantly likely to occur in the reasonably foreseeable future.

**B. Respondents' Failure to Show Significant Likelihood of Removal Under 8 C.F.R. § 241.13(i)(2) Violates Due Process.**

"The phrase 'significant likelihood' requires something more than a mere possibility that removal will occur. Evidence that 'there is at least some possibility that' the designated country of removal 'will accept Petitioner at some point . . . is not the same as a significant likelihood that [he] will be accepted in the reasonably foreseeable future.'" *Yan-Ling X.*, 2025 WL 3123793, at *4 (citations omitted). The plain language of § 241.13(i)(2) does not allow a court in the first instance to make the required individualized finding. *Hoac*, 2025 WL 199377, at *3; *Nguyen*, 788 F. Supp. 3d at 150 (quoting *Kong v. United States*, 62 F.4th 608, 620 (1st Cir. 2023)). Instead, the court should review ICE's determination using the factors set forth in 8 C.F.R. § 241.13(f), which are meant to instruct ICE. *Hoac*, 2025 WL 199377, at *3. Section 241.13(f) states:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature

---

[5] Indeed, on the government's notice of revocation of release, the box regarding violations of release is *not checked* as a basis for revoking OSUP. (Doc. 8-1 at 1.) (emphasis added). Thus, the Court finds that 8 C.F.R. § 241.13(i)(1), which provides that any "alien . . . released under an order of supervision . . . who violates any of the conditions of release may be returned to custody" and held "for an additional six months . . . to effect the alien's removal" is not at issue.

7

of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

Respondents cannot demonstrate changed circumstances showing a significant likelihood that Petitioner will be removed to Vietnam. (*See* Doc. 8.) In their opposition, Respondents state:

The government does not dispute that prior to 2025 it was difficult to acquire travel documents from Vietnam. However, as district courts throughout the United States have recognized, there has been a "recent increase in travel document approvals and subsequent removals . . . to Vietnam [which] shows that there is a "significant likelihood that the alien may be removed in the reasonably foreseeable future." (citations omitted)

These judicially noticeable examples are why the government herein disputes Petitioner's claim that there is no good reason to believe he will be deported to Vietnam in the reasonably foreseeable future. . . The socio-political shift by Vietnam in its willingness to accept [its] nationals with final orders of removal is clearly changed circumstances since Petitioner was released on an [OSUP] over twenty years ago.

(Doc. 8 at 1–2.) Furthermore, the notice of revocation of release only indicates that "ICE is seeking a travel document to effect your expeditious removal to Vietnam." (Doc. 8-1 at 1.) This is insufficient to show a significant likelihood of removal.

First, assessing ICE's "ongoing . . . efforts to remove [the] alien," this Court cannot conclude that Petitioner's removal is reasonably foreseeable. 8 C.F.R. § 241.13(f). Though Respondents claim that "ICE is seeking a travel document" to Vietnam, (Doc. 8-1 at 1), Respondents provide no evidence to show the steps they have taken to remove the Petitioner, such as contacting the Vietnamese Embassy/Consulate to initiate the process. As Petitioner notes, no passport or travel document has been issued in this case. (Doc. 1 at 5.) Respondents do not dispute this. (*See* Doc. 8.) This Court has previously held that the mere "intent to eventually complete a travel document request for Petitioner does not constitute a changed circumstance." *Hoac*, 2025 WL 1993771, at * 4; *Phan*, 2025 WL 1993735, at *5.

Unlike the cases cited by Respondents, (*see* Doc. 8 at 2), the lack of travel documents or

any evidence regarding steps taken to secure travel documents shows that removal is not reasonably foreseeable. *Cf. Nguyen v. Noem*, 797 F. Supp. 3d 651, 657, 672 (N.D. Tex. Aug. 10, 2025) (finding changed circumstances where the government *had obtained travel documents* and had scheduled petitioner's removal to Vietnam, rendering his removal imminent) (emphasis added); *Vu v. Warden, et al.*, No. 1:25-cv-01631-WBS-JDP, 2026 WL 202948, at *1 (E.D. Cal. Jan. 26, 2026) ("ICE *obtained a travel document* from the government of Vietnam on January 5, 2026, and has now scheduled petitioner's removal to Vietnam.") (emphasis added); *Vo v. Board of Immigration Appeals*, et al., No. 26-cv-01801-BLF, 2026 WL 637033, at *2 (N.D. Cal. Mar. 6, 2026) ("ICE *has procured valid travel documents* for Vo issued by Vietnam, and ICE intends to remove Vo to Vietnam on March 15, 2026.") (emphasis added); *Huynh v. Noem, et al.*, No. 4:26-cv-00017-O, 2026 WL 694481, at *3 (N.D. Tex. Mar. 12, 2026) ("The Government has shown that Petitioner has filled out paperwork to apply for travel documents to Vietnam and that *request has been sent to the Vietnamese consulate*.") (emphasis added).[6]

Second, assessing "the history of the Service's efforts to remove [the] alien[] to the country in question," Respondents fail to meet their burden. 8 C.F.R. § 241.13(f). Sometime in 1999, ICE released the Petitioner from custody because it was unable to secure travel documents to Vietnam. (Doc. 1 at 3, 16.) Yet, Respondents fail to "provide[] [] details about why that documentation could not be obtained in the past" and fail "to show why obtaining that particular documentation is more likely [to occur] this time around," which weighs in Petitioner's favor. *Liu v. Carter*, No. 25-3036-JWL, 2025 WL 1696526, at *3 (D. Kan. June 17, 2025). Though Respondents cite general, socio-political changes in Vietnam's willingness to now accept nationals with final orders of removal, Respondents provide no specific details as to why obtaining documentation *in this specific case* is now more likely to occur. *See id*. at *1–2 (finding that "an increase in successful repatriations to . . . China in 2024" did not bear on the likelihood of obtaining travel documents for petitioner absent some evidence specific to petitioner's case). On three separate occasions, this Court has similarly found that past difficulties in obtaining

---

[6] The other case cited by Respondents is inapplicable because the court applied the *Zadvydas* framework, as opposed to 8 C.F.R. § 214.13(i)(2), which as explained above is the incorrect standard. *See Nguyen v. Bondi, et al.*, No. CIV-25-01204-JD, 2026 WL 637416, at *1, 3 (W.D. Okla. Mar. 6, 2026).

travel documents suggest that removal is not reasonably foreseeable. *Hoac*, 2025 WL 1993771, at *4 (explaining that respondents' inability to remove petitioner in 2023 "due to § 1231(a)(2) concerns with travel documents" raised doubt that petitioner's removal was foreseeable); *Phan*, 2025 WL 1993735, at *5; *Huang*, 2026 WL 279888, at *6.

Third, assessing "the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question," Respondents fail to meet their burden. 8 C.F.R. § 241.13(f). Respondents argue that there has been a "recent increase in travel document approvals and subsequent removals to Vietnam" and that "the socio-political shift by Vietnam in its willingness to accept [its] nationals with final orders of removal is clearly changed circumstances since Petitioner was released on an [OSUP] over twenty years ago." (Doc. 8 at 1–2). Respondents rely on *Huynh* and *Nguyen's* discussion regarding Vietnam's recent repatriation agreement for pre-1995 arrivals (e.g., Vietnam nationals who arrived in the U.S. before 1995) to show that Petitioner (a pre-1995 arrival) is now likely to be removed to Vietnam. (*Id*. at 2.) In *Nguyen*, the Court explained that "in 2020[,] the United States and Vietnam entered into a new Memorandum of Understanding [("MOU")] that created a process of removal for pre-1995 arrivals." *Nguyen*, 797 F. Supp. 3d at 658.

In *Huynh*, the court relied on this new MOU, along with the government's assertion that it "has been successful in removing more and more Vietnamese citizens with final orders of removal, including pre-1995 arrivals" to find a significant likelihood of removal in petitioner's case. *Huynh*, 2026 WL 694481, at *2. The court explained that "the undisputed evidence is that relationships between the two countries has changed since January 2025, travel documents are being approved, and removal are happening at an increasing rate." *Id*. at *3 (citing *Nguyen*, 797 F. Supp. 3d at 668). "Specifically, in fiscal year 2024, 58 people were removed to Vietnam in accordance with removal orders, and in fiscal year 2025, there have been 327 pre-1995 persons removed. Such a significant increase in removed persons from the group that Petitioner belongs to is sufficient evidence of a drastic change in circumstances."[7] *Id*.

---

[7] The MOU relied on by the courts in *Huynh* and *Nguyen* expressly states that Vietnam will only engage in efforts to issue travel documents "*if* the individual meets four conditions." *Tran v. Scott*, No. 2:25-cv-01886-TMC-BAT, 2025 WL 2898638, at *2 (W.D. Wash. Oct. 12, 2025) (emphasis added). Despite

However, neither *Nguyen* nor *Huynh* is binding on this Court as those opinions are out of the Northern District Court of Texas. Additionally, in both *Nguyen* and *Huynh*, the government demonstrated concrete efforts in obtaining Vietnamese travel documents for the specific petitioners, which added to a finding of significant likelihood of removal. *See Huynh*, 2026 WL 694481, at *3 (explaining that the government's efforts in submitting a travel document request to the Vietnamese consulate "combined with recent increase in travel document approvals and subsequent removals of pre-1995 arrivals to Vietnam" showed significant likelihood of removal); *Nguyen*, 797 F. Supp. 3d at 669 (explaining that the government had already secured travel documents to Vietnam and such facts bolstered a finding of significant likelihood of removal). As explained above, the government has not yet obtained a Vietnamese travel document and has failed to demonstrate any efforts whatsoever to obtain such documents.

Finally, though the court in *Huynh* indicated that as of "fiscal year 2025, . . . 327 pre-1995 persons [were] removed [to Vietnam]," *Huynh*, 2026 WL 694481, at *3, publicly available statistics on ICE's website indicate otherwise. During fiscal year 2025, there were 708 Vietnamese nationals in ICE detention and only 12 successful removals. *See* U.S. DHS, *ICE Enforcement and Removal Operations Statistics*, https://www.ice.gov/statistics (last visited March 23, 2026). Thus, in year 2025, only about 1.69% of Vietnamese detainees were deported. Based on these recent statistics, Petitioner's removal to Vietnam does not appear significantly likely to occur in the foreseeable future. Further, as in *Phan*, this Court is also missing pertinent information, such as the "total number of requests for removal that were made to Vietnam" during year 2025. *Phan*, 2025 WL 1993735, at *4 (citations omitted). In *Phan*, this court explained that because it had no evidence regarding the percentage of successful travel document

---

relying on the MOU as the basis for changed circumstances in this case, (*see* Doc. 8 at 2), Respondents fail to explain how Petitioner meets all four conditions. *See Tran*, 2025 WL 2898638, at *2 ("Under Section 4 of the MOU, Vietnam affirmed that it 'intends to issue travel documents where needed, and otherwise to accept the removal of an individual subject to a final order of removal from the United States' if the individual meets four conditions. . . First, the individual must have Vietnamese citizenship (and only Vietnamese citizenship) . . . Second, the individual must have violated U.S. law, been ordered removed by a U.S. authority, and completed any sentence of imprisonment. . . Third, the individual must have resided in Vietnam prior to arriving in the United States and have no right to reside in any other country or territory. . . The fourth condition has been redacted from the publicly disclosed version of the MOU filed by Petitioner, and Respondents have not offered any explanation of what it is.").

requests to Vietnam, it could not properly gauge how likely it is that petitioner would obtain a travel document in this case (e.g., if DHS submitted 350 requests and Vietnam issued travel documents for 328 individuals, then removal would be significantly likely). *Id.* (citations omitted). Similarly, this Court lacks such information in this case.

Considering the evidence, Respondents fail to show a significant likelihood of Petitioner's removal to Vietnam. Though the government has significant discretion to enforce immigration laws, it must do so consistent with the requirements of its own regulations and the Due Process Clause. *See Diaz v. Wofford*, No. 1:25-cv-01079-JLT-EPG, 2025 WL 2581575, at *7 (E.D. Cal. Sept. 5, 2025) (citations and quotations omitted). DHS's failure to follow its own procedural regulations constitutes a due process violation in this case.

**C. Respondent's Failure to Provide a Pre-Deprivation Hearing Violates Due Process.**

Petitioner further asks this Court to "[g]rant any other relief that is just and practicable." (Doc. 1 at 11.) Many courts have found that when a non-citizen subject to a final order of removal is released on OSUP and is re-detained years later, the non-citizen is entitled to a pre-deprivation hearing prior to detention due to an accrued liberty interest. *See e.g., J.L.R.P.*, 2025 WL 3190589, at *8–10; *Alva v. Kaiser*, No. 25-cv-06676-RFL, 2025 WL 2419262, at *3–5 (N.D. Cal. Aug. 21, 2025). In *J.L.R.P.*, this Court found that the petitioner was entitled to a bond hearing prior to re-detention because (1) petitioner had a significant private interest in remaining free from detention after being out of custody for nearly four years and built normal attachments to life (2) the risk of erroneous deprivation is high because 8 C.F.R. § 241.13 does not provide for review of ICE's reasons for revocation by a neutral arbitrator and (3) the government's interest in detaining petitioner without a hearing is low because in immigration court, custody hearings are routine with minimal costs. *J.L.R.P.*, 2025 WL 3190589, at *9–10 (citing the factors enumerated in *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976)). Similarly, in *Alva*, the court found a due process violation where the government detained a non-citizen with a final order of removal, released on OSUP for over six years, without a pre-deprivation hearing. *Alva*, 2025 WL 2419262, at *3–5.

12

Likewise, for twenty-six years, Petitioner lived at liberty in the United States. (Doc. 1 at 3–5.) He "regularly checked in every year as required with ICE" and "compli[ed] with the terms of supervision." (*Id*. at 4.) Respondents do not dispute this. (*See* Doc. 8.) As such, there is no change in circumstances to justify his re-detention in this regard. Accordingly, in the event of re-detention, Petitioner is entitled to a pre-deprivation hearing where the government bears the burden of showing that Petitioner poses a flight risk or danger to the community. *J.L.R.P.*, 2025 WL 3190589, at *9–10; *Alva*, 2025 WL 2419262, at *3–5.

Moreover, as part of a noncitizen's release under 8 C.F.R. § 241.13(h)(1), they are placed certain conditions of release "in order to protect the public safety and to promote the ability of the Service to effect the alien's removal as ordered, or removal to a third country, should circumstances change in the future." The order of supervision shall "include the conditions that the alien obey all laws" and "any other conditions that the HQPDU considers necessary to ensure public safety and guarantee the alien's compliance with the order of removal." *Id*. (emphasis added). ICE must have considered these conditions when releasing Petitioner in 1999, which suggests that ICE likely determined he was neither a flight risk nor danger to the community at that time.[8] *Id*. Yet, Respondents do not claim that Petitioner's re-detention is justified because he now poses a flight risk or danger. (*See* Doc. 8.) For these reasons, the Court grants the habeas petition and finds that Petitioner is entitled to immediate release and a pre-deprivation hearing in the event of a future re-detention.

## IV.    CONCLUSION AND ORDER

1.    Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED.**

---

[8]  Under a related regulation 8 C.F.R. § 241.4(e), which also concerns the continued detention of inadmissible, criminal, and other aliens beyond the removal period, "[b]efore making any recommendation or decision to release a detainee, a majority of the Review Panel members, or the Director of the HQPDU in the case of a record review, must conclude that: (1) Travel documents for the alien are not available or . . . immediate removal, while proper, is otherwise not practicable; (2) The detainee is presently a non-violent person; (3) The detainee is likely to remain nonviolent if released; (4) The detainee is not likely to pose a threat to the community following release; (5) The detainee is not likely to violate the conditions of release; and (6) The detainee does not pose a significant flight risk if released." This suggests that when DHS releases a noncitizen subject to a final order of removal under either § 241.4 or § 241.13, DHS likely first determines that they are neither a flight risk nor danger.

2.      Petitioner's Motion for Temporary Restraining Order (Doc. 3) is **DENIED** as moot.

3.      Respondents are **ORDERED** to release Petitioner immediately under the conditions of his most recent order of supervision.

4.      Respondents are **ENJOINED** from re-detaining petitioner unless there are material changed circumstances and a neutral decisionmaker determines that there is a significant likelihood of petitioner's removal in the reasonably foreseeable future, or Respondents demonstrate by clear and convincing at a pre-deprivation bond hearing[9] before a neutral decisionmaker that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

5.      The Clerk of the Court is directed to **CLOSE THE CASE**.

IT IS SO ORDERED.

Dated:    **March 24, 2026**

_____
UNITED STATES DISTRICT JUDGE

---

[9] If legally sufficient circumstances justify arrest without notice in advance, a post-deprivation hearing consistent with the requirements set forth here, SHALL be provided within seven days of the arrest.